United States District Court for the Western District of Texas
Austin Division

| Samantha Liedtke | § | |
| Plaintiff, | § | |
| | § | Case no. _____ |
| v. | § | |
| | § | |
| City of Austin, | § | |
| Defendant. | § | |

## Complaint

### I. Parties

1. Samantha Liedtke (Samm) is a former Austin police officer and resident of Travis County. She currently serves as a sexual assault victim counselor in the Travis County District Attorney's Office. For three terrible months during the winter of 2020-2021, Samm's male colleagues and supervisors at the Austin Police Department subjected her to gender-based discrimination, harassment, and retaliation. Samm's employment at APD was so toxic and unsafe that she resigned on February 2, 2021.

2. The City of Austin employed Samm from June 24, 2019 until her resignation on February 2, 2021.

### II. Jurisdiction

3. This Court has subject matter jurisdiction over Samm's federal claims under 28 USC § 1331.

4. Samm has satisfied all procedural requirements for filing this lawsuit. She timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and is filing this lawsuit within 90 days of receiving notice from the EEOC that she has the right to sue.

### III. Venue

5. Under 28 U.S.C. § 1391(b), the Western District of Texas is the correct venue for this lawsuit because Samm's colleagues and supervisors at the Austin Police Department subjected her to gender discrimination, harassment, and retaliation in this District.

### IV. Facts

6. The City hired Samm Liedtke on June 24, 2019 as a police cadet.

7. Samm graduated with honors from the Austin Police Academy on January 31, 2020.



8. Samm was awarded "Honor Cadet" for her outstanding achievement in academics, defensive tactics, and fitness throughout her academy training.



9. Samm timely completed her Field Training on May 17, 2020 without seeking any extensions.

10. Upon successfully completing her Field Training, the City deemed Samm qualified to work patrol as a solo officer.

11. Samm loved being an Austin Police officer and she excelled at the work.

 

12. Samm's compassionate efforts to connect with community members and protect Austin's most vulnerable residents—even in instances where force was required—embodied the "servant leadership" that the City claims to desire in its police officers.



> Samantha,
> I reviewed one of your videos (6,6,20) as part of the RTR Review Task Force and I wanted to tell you how proud I am of your performance.
> You did a great job talking to a group of females on the front step of the Main. The empathy & humility you demonstrated that Saturday evening reflects highly on your character.
> Thank you for taking the Time and Effort in being a great ambassador for our Dept.
> Sgt. John Bryant
>
> I look forward to seeing you taking on Leadership roles in the Department.

On December 30, 2020, Officer Liedtke worked with a victim of family violence who was very hesistant to talk with law enforcement. Officer Liedtke was patient, kind, and empathetic with the victim. Due to a high volume of calls, a crisis unit was unable to get to the scene for an extended period of time. Officer Liedtke assisted the victim into getting into a secure shelter and waited as the victim packed up her belongings. When I arrived, the victim stated to me that Officer Liedtke is "saving my life" and voiced feeling as if this is the first time someone has truly cared and wanted to help her in a long time.

13. Samm's performance was universally acclaimed by citizens, peers, and her chain of command. No one had a problem with Samm or her performance until she angered her male shift colleagues and they began a continuous and escalating campaign of gender-based harassment and intimidation.

 

14. Everything changed in the fall of 2020 when Samm's male shift colleagues and supervisors turned against Samm. After she called out their bad, quiet quitting behavior, they harassed and intimidated her until she felt she had to resign for her own safety and the safety of crime victims. Samm's male colleagues and sergeants threatened Samm's safety but even worse, they abused their authority to threaten the safety of vulnerable family violence victims as a way to punish Samm and force her to submit to their "warrier" mentality.

15. After Samm's male colleagues turned on her, they used her smaller, female stature against her and accused her of being too weak and too compassionate. They mocked, bullied, and ostracized her for not having as many "response to resistance" events as her male colleagues. They accused her of trying to make them look bad by taking more calls and responding to more citizens' needs than her peers.

16. Samm was not weak. Her female stature was smaller than her male colleagues, but she excelled at the fitness and conditioning required of police officers.



17. After three months of escalating, gender-based harassment and retaliation, Samm was forced to resign.

18. In approximately mid-October 2020, Samm frequently observed three of her male patrol colleagues quiet quitting while on duty during their shared shift.

19. "Quiet quitting" is when an employee does the minimum to maintain employment without enthusiasm or effort.

20. Earlier that year, in July 2020, FOX7 reported that the Austin Police Association president recommended that his members quiet quit by only responding to calls for which they had no discretion about whether to respond and never self-assign discretionary calls. This news report is available at https://www.fox7austin.com/news/austin-police-association-recommends-members-stop-active-enforcement.

21. The Travis County District Attorney wrote to the APD Chief criticizing a similar ongoing quiet quitting practice by Austin police in August 2021. The District Attorney wrote that he "first raised these concerns with Interim Chief Chacon on June 23. We informed him that, according to reports we received from members of the community, some APD officers were declining to investigate suspected criminal activity." This letter is available at https://www.kxan.com/documents/letters-from-travis-county-da-travis-county-attorney-about-apd-crime-investigations/.

22. This quiet quitting behavior by Austin police was bad enough that the Chief issued a statement ordering officers to do their jobs. "Our messaging to department personnel through internal communication and daily briefings, clearly and consistently directs officers to continue enforcing the law and follow all COA/APD policies." https://www.kxan.com/investigations/travis-county-da-notes-deeply-troubling-reports-of-some-apd-officers-declining-to-investigate-crimes/.

23. The quiet quitting behavior by Samm's colleagues came in the form of unnecessary and extended self-assignment to discretionary "checking area" calls so that they would not be available to self-assign to actual calls for help from Austin residents.

24. Samm also observed these same colleagues remaining "code 4" on completed calls long after all police action had concluded. This allowed her colleagues to appear unavailable to self-assign to actual calls for help from Austin residents.

25. Samm's supervisor also noted this behavior and counseled Samm's shift to act more responsibly.

26. On November 11, 2020, Samm observed her colleagues self-assign for more than an hour to an evading vehicle call but they were actually just hanging out together at the Planet K parking lot on Rundberg and I35.

27. So Samm asked her colleagues for help with actual calls for service with a message stating something to the effect of, "Y'all you can hunt later, help me with these p3's. this is what sarge was talking about." This innocuous message touched a nerve with Samm's male colleagues, and they began their months-long campaign of singling her out as a woman for harassment and discrimination.

28. Two male colleagues immediately responded to Samm's message begging for more help by self-assigning to the same call that Samm had currently self-assigned. But they did not actually respond to the call or do any police work related to that call for service. Instead, they told Samm to meet them in a parking lot nearby under the auspices of working together on the call. When Samm arrived, her colleagues berated, threatened, and intimidated her.

29. After the incident in the parking lot, Samm put herself back into service and very soon after responded to a critical and potentially dangerous call that was initially dispatched as a "Disturbance Hot Shot" but was updated to "Gun Hot Shot" and then "Shoot/Stab Hot Shot".

30. As Samm was responding to this potentially dangerous situation by herself, none of her male colleagues self-assigned the call or offered any assistance. Instead, the two who had just berated and threatened her falsely indicated that they were still responding to the prior call (for which they never took any police action) and drove to one of their preferred break spots to hang out together.

31. The Hot Shot call was potentially dangerous enough that officers from other sectors responded after seeing that Samm was alone in responding to this aggravated assault.

32. After the night that Samm's colleagues refused to assist her with the aggravated assault, they took numerous actions to intimidate and harass her and single her out as a woman for being too "soft", for caring too much about domestic violence victims, and for not using force on suspects with as much frequency as they did.

33. On November 28, 2020, in Samm's presence, they watched and collectively mocked a video of her use of force the day before. This was in direct violation of APD policy that officers are not to access department videos for non-law enforcement purposes.

34. Samm relayed the harassment she was under to her former Field Training Officer who relayed it to their supervising Corporal. Later, as the harassment had continued and escalated, on December 13, 2020, she relayed the entire situation to her supervising Corporal directly.

35. Initially, the shift Corporal acknowledged the problems and promised to implement more structure so that no officers would be permitted to pretend to be working while quiet quitting. Later, the Corporal backtracked and did not implement the promised structures and rules.

36. In late December, the harassment took a darker turn. Knowing that Samm as a woman was particularly concerned about family violence, Samm's colleagues took actions that would harm female family violence victims in order to harass Samm into quitting the department.

37. In one example, on December 30, 2020, a colleague abused his authority and placed an unnecessary BOLO on the car of a female victim of family violence simply to upset Samm.

38. In another example, on December 31, 2020, Samm's male colleagues berated and intimidated her for her proper actions in response to a family violence call because she made them look bad by taking the situation seriously, helping the female victim, and responding appropriately.

39. Samm was so worried about her colleagues' actions harming crime victims to harass her that on January 14, 2021, she voluntarily solicited and found an officer who was willing to trade shifts with her.

40. The planned shift trade did not happen because the supervising Sergeant on the shift that Samm was attempting to trade into said he did not want a weak woman on his shift.

41. On January 17, 2021 Samm was criticized by her supervisor for spending too much time helping crime victims especially family violence victims.

42. Later that day as Samm was helping a pregnant sexual assault victim understand the resources in Travis County that were available to help her, her supervisor came to the scene and implied she was wasting her time by showing compassion and giving assistance to a victim. Despite this alleged waste of time, Samm still responded to more calls for service than any of her colleagues that night.

43. On January 18, 2021, Samm was put on an Employee Success Plan in retaliation for making her colleagues look bad by doing her job. The incidents used to justify her Plan were ones that she had already voluntarily brought to her supervisors for advice and counseling or ones that had never

before been brought to her attention. In other words, the Employee Success Plan was unnecessary and retaliatory.

44. At this point, it was clear to Samm that her presence on the shift was harming victims because her colleagues continued to abuse their authority over victims to harass Samm. She had tried to switch shifts to get away from her tormenters, but she was discriminated against by that shift's supervisor because she was a woman. She had been retaliated against for being too "soft" and not using enough force on suspects. The situation was so toxic that she felt she had to resign.

45. Samm resigned on February 2, 2021.

## V. Title VII Claim for Discrimination, Hostile Work Environment, and Retaliation on the Basis of Gender

46. Samm realleges the foregoing paragraphs into her Title VII claim.

47. Samm is a member of a protected class on the basis of her sex and gender.

48. Samm in all respects was performing her job in a manner consistent with the City's expectations.

49. Samm's male colleagues and supervisors discriminated against her as described above, including harassment, subjecting her to a hostile work environment, and retaliation.

50. The City's actions were taken with willful and wanton disregard for Samm's rights under Title VII.

51. As a direct and proximate result of the said unlawful employment practices and disregard for Samm's rights and sensibilities, Samm has suffered humiliation, degradation, emotional distress, other consequential damages including lost wages and loss of earning capacity.

## VI. Request for jury trial

Samm requests a jury trial.

## VII. Prayer

For all these reasons, Samantha Liedtke requests that the City be summoned to appear and answer her allegations and that the Court enter judgment in against the City for violation of her rights under Title VII and for all compensatory and punitive damages and court costs.

Respectfully submitted,
*/s/ Rebecca Webber*
Rebecca Webber
Webber Law
4228 Threadgill Street
Austin, Texas 78723

512-537-8833
rebecca@rebweblaw.com

Attorney for Plaintiff Samanth Liedtke